FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jul 06 2023

KEVIN P. WEIMER , Clerk

By: s/Kari Butler

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN ROSS,

     Plaintiff,

  v.

CITY OF FAIRBURN and
ELIZABETH CARR-HURST,

     Defendants.

CIVIL ACTION FILE NO.

1:22-CV-01414-AT-WEJ

## FINAL REPORT AND RECOMMENDATION

Plaintiff, John Ross, filed this action for age and sex discrimination against defendants for their failure to hire him for the position of Economic Development Director ("EDD") for the City of Fairburn, Georgia (the "City"). Plaintiff asserts that the City's actions violated his rights under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (Am. Compl. [12] Counts I-II.) Plaintiff also asserts that Fairburn Mayor Elizabeth Carr-Hurst violated his Fourteenth Amendment equal protection rights (enforced via 42 U.S.C. § 1983) by denying him the EDD position because of his age and sex. (Am. Compl. Counts III-IV.)

After a period of discovery, defendants jointly filed a Motion for Summary Judgment [34], which has been fully briefed. (See Mem. Supp. Defs.' Mot. for Summ. J. [34-1]; Mem. Opp'n to Summ. J. [36-1]; Reply Supp. Defs.' Mot. for Summ. J. [38].) For the reasons explained below, the undisputed material facts show that neither plaintiff's sex nor age had anything to do with the employment decision at issue here. Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment [34] be **GRANTED**.

## I.    STATEMENT OF FACTS

To assist with framing the undisputed material facts, Local Civil Rule 56.1 requires certain filings by the parties in conjunction with a summary judgment motion. Defendants as movants filed a Statement of Undisputed Material Facts [34-2] ("DSUMF"), to which plaintiff responded. (See Pl.'s Resp. to DSUMF [36-6] ("PR-DSUMF").) As allowed by the Local Civil Rules, plaintiff filed a Statement of Additional Facts [36-7] ("PSAF"), to which defendant responded. (See Defs.' Resp. to PSAF [40] ("DR-PSAF").)

The Court uses the parties' proposals and responses as the basis for the statement of facts under the following conventions. When a party admits a proposed fact (in whole or in part), the Court accepts that fact (or the part admitted) as undisputed for the purposes of this Report and Recommendation and cites only

to the proposed fact.  When a party denies a proposed fact (in whole or in part), the Court reviews the record cited and determines whether that denial is supported, and if it is, whether any fact dispute is material.  The Court sometimes modifies a proposed fact per evidence cited to support it or because of evidence cited in the opposing party's response.  The Court also includes facts drawn from its review of the record, see Fed. R. Civ. P. 56(c)(3), and rules on objections to proposed facts. Inclusion of a proposed fact to which an objection was asserted without discussion means that the objection was overruled.  Given some duplication between PR-DSUMF and PSAF, the Court sometimes references one and not the other.  Finally, the Court views all proposed facts in light of the standards for summary judgment set out infra Part II.

### A.    Parties and Other Relevant Individuals

In 2021, plaintiff Ross was a 60-year-old man.  (DSUMF ¶ 8.)  Defendant Elizabeth Carr-Hurst served as Mayor of the City of Fairburn from 2018 to 2022. (Id. ¶ 2.)[1]  Linda Johnson was the City's Director of Human Resources ("HR")

---

[1] The record does not reflect the Mayor's age.  Her counsel represents that she is in her seventies.  (Defs.' Reply [28] 9 n.1.)

from 2018 to 2022.  (Id. ¶ 4.)[2]  The City hired Sylvia Abernathy in 2020 as Manager

of its Main Street Program.  (Id. ¶ 6.)[3]  The City is an equal opportunity employer.

(Id. ¶ 25.)

Defendants contend that Mayor Carr-Hurst served as the City's Chief

Executive Officer and oversaw all Department Heads.  (DSUMF ¶ 3.)  Plaintiff

---

[2] Ms. Johnson's responsibilities in the hiring process included: (1) announcing vacant positions; (2) accepting applications; (3) reviewing applications for the minimum requirements to be met for vacant positions; (4) presenting minimally qualified applicants to department heads; and (5) coordinating interviews with selected applicants.  (DSUMF ¶ 5.)  Plaintiff proposes a number of facts about Ms. Johnson's practices in the hiring process, including her belief that all minimally-qualified applicants for a position should be interviewed.  (PSAF ¶¶ 1-9.)  As discussed above, Ms. Johnson did not conduct the interviews for the position denied to plaintiff.  Moreover, Ms. Johnson was expressing her opinion as a HR professional; there is no requirement in the City's policies or ordinances that all minimally-qualified applicants must be interviewed.  Therefore, the Court excludes PSAF ¶¶ 1 through 9 as immaterial.

[3] Plaintiff denies the above proposed fact because he asserts that Ms. Abernathy did not list this position on her Application for the EDD position, which she signed under penalty of perjury.  (PR-DSUMF ¶ 6.)  This denial is not supported by the record cited.  Although Ms. Abernathy did not list her job as Main Street Manager in the section of the Application asking her to describe her employment history, her Application states that "[c]ultivating relations to enhance community benefits, while promoting economic development has been a part of my role as Main Street manager."  (Abernathy Dep. Ex. 11 [35-4], at 158.)  It is undisputed that Ms. Abernathy was already employed as the City's Main Street Manager when the EDD position became vacant (discussed below).  (Carr-Hurst Dep. [35-2] 58-59.)  Finally, the record does not reflect Ms. Abernathy's age.  Defendants' counsel represents that Ms. Abernathy is in her late forties.  (Defs.' Reply [28] 9 n.1.)

disputes this proposed fact, pointing to a City ordinance [36-3] which gives the City Administrator the power to appoint and supervise all Department Heads. (PR-DSUMF ¶ 3.) This must be a situation where the actual practice differs from the rule, as neither side proposes any facts suggesting that a City Administrator played a part in filling the EDD position. HR Director Johnson testified in a fashion similar to the Mayor, stating that "all directors or department heads report directly to the Mayor." (Johnson Dep. [35-3] 71.) Finally, plaintiff proposes (and defendants admit) that the "Director of Economic Development reports to the mayor." (PSAF ¶ 10.)

**B.    Filling the EDD Vacancy**

At some point, the City's EDD departed. (Carr-Hurst Dep. [35-2] 15.) The Mayor asked Main Street Manager Abernathy to take on some of the EDD's critical responsibilities until that position could be filled. (Id. at 15-16; see also DSUMF ¶¶ 7, 20.)[4] These responsibilities included meeting with new businesses planning

---

[4] Plaintiff's denials of the above proposed facts do not contravene them. Ms. Abernathy's failure to list any of the 13 major duties performed by the EDD on her application for that position is immaterial. (PR-DSUMF ¶ 7.) Moreover, Ms. Abernathy did not "falsely state" that she began receiving the salary for the EDD position in February 2021. (Id.) At her February 2023 deposition, Ms. Abernathy testified that she "believed" her salary increased when she took on some of the EDD's duties "around" February 2021, and that she thought she was earning about

to enter the City.  (PSAF ¶¶ 39-40.)[5]  The Mayor then asked HR Director Johnson to post the EDD position to obtain applicants.  (Carr-Hurst Dep. [35-2] 15.)

Ms. Johnson posted the EDD vacancy notice, with the application window closing on February 12, 2021, at 5:00 p.m.  (DSUMF ¶ 9.)[6]  Plaintiff timely applied for the position.  (Id. ¶¶ 1, 8.)  After the application window closed, Ms. Johnson advised Mayor Carr-Hurst that Mr. Ross was the only applicant; the Mayor then advised Ms. Johnson to work with Tarika Peeks on the vacancy announcement and

---

$75,000 per year (which was the approximate salary for the EDD) by March 2021, but she could not recall.  (Abernathy Dep. [35-4] 75.)  Although City payroll records show that Ms. Abernathy's salary did not increase until April 28, 2021, when she was promoted to EDD (Pl.'s Ex. 16 [36-4], at 5), there is no material fact dispute given her inability to recall dates or amounts.  Finally, HR Director Johnson's testimony that no one was officially assigned as "interim" EDD, and Ms. Abernathy's failure to call herself "interim" EDD in her application for the position (PR-DSUMF ¶ 20), does not contravene the Mayor's testimony that she asked Ms. Abernathy to perform some of the duties of that position while it was vacant.  Thus, the Court deems DSUMF ¶¶ 7 and 20 admitted.  See N.D. Ga. Civ. R. 56.1(B)(2)(a)(2).

[5] The Court excludes PSAF ¶ 41 as unsupported by the record cited.  The Court excludes PSAF ¶¶ 50, 51, and 63 as immaterial.

[6] When Ms. Johnson became the HR Director, she made an internal decision to allow applications submitted after the 5:00 p.m. deadline but before midnight on the closing date to be accepted because she wanted to increase the applicant pool. (DSUMF ¶ 10.)

to let Ms. Peeks review applications.  (<u>Id.</u> ¶ 11; <u>see also</u> PSAF ¶¶ 18, 30, 33.)[7]  Ms. Johnson gave plaintiff's application to Ms. Peeks.  (PSAF ¶ 34.)[8]

At some point after he applied for the job but before March 21, 2021, Mr. Ross paid an unannounced visit to the offices of the City of Fairburn.  (PSAF ¶¶ 11, 13, 61; DSUMF ¶ 18; <u>see also</u> Ross Dep. [35-1] 94.)  As he walked up to City Hall, Mr. Ross encountered Mayor Carr-Hurst in the parking lot as she was collecting utility payments from citizens.  (Ross Dep. [35-1] 95; <u>see also</u> PSAF ¶ 12.)  He introduced himself and told the Mayor that he wanted to have a conversation about the EDD position.  (Carr-Hurst Dep. [35-2] 32; <u>see also</u> PSAF ¶ 62.)[9]  The Mayor replied that she was not the person to whom he needed to speak;

_____

[7] Defendants take issue with plaintiff's use of the term "qualified applicant" in PSAF ¶ 30.  They assert that Ms. Johnson said Mr. Ross was "minimally qualified."  (<u>See</u> DR-PSAF ¶ 30.)  In the record cited by the parties, Ms. Johnson testified that Mr. Ross was the only applicant; accordingly, the Court modifies PSAF ¶ 30 above.

[8] Ms. Johnson's lack of knowledge regarding whether Mayor Carr-Hurst ever looked at Mr. Ross's application is immaterial.  (PSAF ¶ 35.)

[9] Mr. Ross testified that he had met Mayor Carr-Hurst during a bus trip to Montgomery, Alabama in 2019.  (PSAF ¶ 64.)  He asserts that she had introduced herself as the Mayor of Fairburn.  (<u>Id.</u> ¶ 65.)  Mr. Ross reportedly had a conversation with Mayor Carr-Hurst on the bus trip.  (<u>Id.</u> ¶ 66.)  He claims that the Mayor described some City employees as "old farts."  (<u>Id.</u> ¶ 67.)  Finally, Mr. Ross claims that he took a picture with the Mayor's mother.  (<u>Id.</u> ¶ 68.)  Defendants deny

she directed him to go into City Hall and talk instead to HR Director Johnson. (Carr-Hurst Dep. [35-2] 32; <u>see also</u> Ross Dep. [35-1] 95 (stating that the Mayor told him to see her scheduler).)   The Mayor felt that Mr. Ross's action was inappropriate given the job application window was still open and any questions he had should have been directed to HR Director Johnson.  (DSUMF ¶ 19.)[10]

On March 21, 2021, HR Director Johnson, Ms. Abernathy, and Ms. Peeks met in City Hall's "Fish Bowl" conference room to review and discuss the applications for the EDD position.  (Johnson Dep. [35-3] 72-73.)[11]  Because there was only one qualified applicant, Ms. Peeks requested that the HR Director repost the vacancy to obtain more qualified applicants.  (DSUMF ¶ 12, modified per record cited.)[12]  HR Director Johnson reposted the vacancy with the application

_____

these proposed facts because the Mayor does not recall meeting Mr. Ross in 2019. (DR-PSAF ¶¶ 64-68.)  This dispute is immaterial.

[10] Plaintiff's denial of the above proposed fact fails to contravene it.  (<u>See</u> PR-DSUMF ¶ 19, citing City personnel policies.)  Thus, the Court deems DSUMF ¶ 19 admitted.  <u>See</u> N.D. Ga. Civ. R. 56.1(B)(2)(a)(2).

[11] Ms. Peeks had asked Ms. Abernathy to participate in this meeting. (DSUMF ¶ 27.)  At this point, Ms. Abernathy had not applied for the EDD position; had she done so, she would not have been allowed to participate.  (<u>Id.</u>)

[12] During the meeting on March 11, 2021, the reviewers had neither the applicants' names nor their demographic information (i.e., race, age, or gender); they only had information about the applicants' qualifications.  (DSUMF ¶¶ 13-

window closing on April 11, 2021, at 5:00 p.m.  (Compl. Ex. D [1] 12; <u>see also</u> City's Interrog. Resp. [35-4] 173.)[13]

Ms. Abernathy applied for the EDD position on April 11, 2021.  (DSUMF ¶ 20; 43.)[14]  HR Director Johnson contacted Ms. Abernathy after the April 11, 2021 closing date to advise her that her application had been received before the closing date.  (<u>Id.</u> ¶ 21.)  Mayor Carr-Hurst testified that HR Director Johnson told her that Mr. Ross and Ms. Abernathy had applied for the EDD position after the second posting.  (PSAF ¶ 19.)

After the closing of the second posting, the Mayor received the applications of both Mr. Ross and Ms. Abernathy.  (DSUMF ¶ 22.)[15]  Mayor Carr-Hurst

_____

14.)  Mr. Ross's application was not treated differently from a procedural aspect than the other applications for the EDD position.  (<u>Id.</u> ¶ 16.)

[13] Following the extension of the application window, Mr. Ross telephoned HR Director Johnson and asked what he needed for the position; the HR Director felt Mr. Ross was being pushy because of the tone of his voice and his threat to file an EEO complaint.  (DSUMF ¶ 26; plaintiff's relevancy objection overruled.) There is no evidence that the Mayor learned of this conversation.

[14] The City received Ms. Abernathy's application after 5:00 p.m. cutoff, but considered it timely.  (<u>See</u> <u>supra</u> note 6.)

[15] Plaintiff disputes facts defendants do not propose and points out instead discrepancies between the testimony of the Mayor and the HR Director regarding who gave the Mayor the two candidates' applications.  (<u>See</u> PR-DSUMF ¶ 22; <u>see also</u> PSAF ¶¶ 20-21, 28-29.)  Any dispute over who gave the applications to the

interviewed Ms. Abernathy twice for the EDD position—once on April 18, 2021 and again on April 28, 2021. (DSUMF ¶ 24[16]; see also PSAF ¶¶ 36-38.)[17] The Mayor did not interview Mr. Ross because she did not feel that he had relevant experience for the EDD position. (DSUMF ¶ 23.)[18]

---

Mayor is immaterial. Plaintiff also shows that the Mayor testified that HR Director Johnson recommended she interview Ms. Abernathy, while Ms. Johnson's recollection was that she made no such recommendation. (See PSAF ¶¶ 14-17, 22-27.) Given that defendants do not contend that the Mayor based her hiring decision on any recommendation from Ms. Johnson, this dispute is also immaterial.

[16] The record plaintiff cites in denial of the above proposed fact fails to contravene it. (See PR-DSUMF ¶ 24.) Thus, the Court deems DSUMF ¶ 24 admitted. Moreover, given plaintiff's own proposed facts (e.g., PSAF ¶¶ 36-38), it is undisputed that the Mayor only interviewed Ms. Abernathy. Thus, it is unclear why plaintiff disputed DSUMF ¶ 24.

[17] That Ms. Abernathy could not recall the questions asked by the Mayor during an interview that occurred two years earlier is immaterial. (PSAF ¶¶ 31-32.) That HR Director Johnson was unaware that the Mayor had interviewed Ms. Abernathy is also immaterial. (Id. ¶ 42.)

[18] Plaintiff again disputes facts defendants do not propose. (See PR-DSUMF ¶ 23.) Whether HR Director Johnson gave the Mayor any applications or whether she made no recommendation to the Mayor regarding whom to interview is immaterial. The undisputed material fact is that the Mayor believed, after reviewing Mr. Ross's application, that he was not qualified to be the EDD so she did not interview him. The Mayor had plenty of experience in hiring persons to fill the EDD position. Her prior two hires had been men. (DSUMF ¶ 17.)

## II.    <u>SUMMARY JUDGMENT STANDARD</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." <u>Rice-Lamar v. City of Fort Lauderdale</u>, 232 F.3d 836, 840 (11th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary

11

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. For factual issues to be "genuine," they must have a real basis in the record. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." Id. at 587.

12

## III.  ANALYSIS

Plaintiff makes age and sex discrimination claims against the City and Mayor Carr-Hurst.  Defendants' Motion seeks summary judgment against all of plaintiff's claims.  The Court summarizes defendants' arguments and plaintiff's responses thereto below as it addresses these two claims.

### A.    Plaintiff's Sex Discrimination Claims

Plaintiff alleges a sex discrimination claim against the City under Title VII and against Ms. Carr-Hurst individually under Section 1983 for an Equal Protection Clause violation.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The Equal Protection Clause provides, in relevant part, that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.  This clause ensures a right to be free from intentional discrimination in employment.  Williams v. Consol. Jacksonville, 341 F.3d 1261, 1268 (11th Cir. 2003).

13

Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . causes . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989) (internal quotation marks and citation omitted). To prevail on a Section 1983 claim, the plaintiff must show that a person acting under the color of state law deprived him of a federal right. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

"Although the Supreme Court 'do[es] not regard as identical the constraints of Title VII and the Federal Constitution, . . . [w]hen section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same.'" Underwood v. Perry Cty. Comm'n, 431 F.3d 788, 793 (11th Cir. 2005) (per curiam) (quoting Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)). Thus, the undersigned analyzes plaintiff's Title VII and Section 1983 intentional-discrimination claims under the same framework.

"Faced with a defendant's motion for summary judgment, a plaintiff asserting an intentional-discrimination claim . . . must make a sufficient factual showing to permit a reasonable jury to rule in h[is] favor." Lewis v. City of Union

14

City, Ga., 918 F.3d 1213, 1217 (11th Cir. 2019).  He may do so in a variety of ways, such as by (1) presenting direct evidence of discrimination, (2) satisfying the burden-shifting framework set out in McDonnell Douglas v. Green, 411 U.S. 792, 800 (1973), or (3) demonstrating a "convincing mosaic" of circumstantial evidence that warrants an inference of intentional discrimination under Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).  See Lewis, 918 F.3d at 1220 & n.6.  Plaintiff does not argue in his Response Brief that he has direct evidence of discrimination.  He proceeds down the second and third lanes only.

McDonnell Douglas established a three-part framework to analyze discrimination claims.  Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1237 (11th Cir. 2016).  If a plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  If the employer meets this burden, the inference of discrimination drops out of the case, and the plaintiff has the opportunity to show by a preponderance of the evidence

that the proffered reason was pretextual.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).[19]

As noted above, plaintiff alleges that he was discriminated against on the basis of sex when he was not selected to be the EDD.  Under the McDonnell Douglas framework, to establish a prima facie case of discriminatory failure to hire, a plaintiff must establish that

> (1) []he is a member of a protected class, (2) []he was qualified for a position and applied for it, (3) []he was not considered for the position despite [his] qualifications, and (4) equally or less qualified individuals outside of [his] protected class were considered or hired for the position.  The prima facie case creates a rebuttable presumption that the employer acted illegally.  At that point, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for [not hiring] the plaintiff. . . .  If the employer does so, the burden shifts

---

[19] To demonstrate pretext, plaintiff must do more than quarrel with defendants' business decisions or substitute his business judgment for that of defendants'.  Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).  Plaintiff may demonstrate that defendants' reason was pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [its] proffered legitimate reason[] for its action that a reasonable factfinder could find [it] unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted).  However, "[a] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'"  Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr., 509 U.S. at 515).

> back to the plaintiff to introduce significantly probative evidence
> showing that the asserted reason is merely a pretext for discrimination.

Underwood, 431 F.3d at 794 (internal quotations marks and citations omitted).

Here, considering all the facts in the light most favorable to the non-moving party, plaintiff established a prima facie case. Plaintiff is over age forty, was qualified for and applied for the EDD position, was rejected, and a younger individual (Ms. Abernathy) was promoted into the job. Therefore, under McDonnell Douglas, the burden shifts to defendants to produce a legitimate, non-discriminatory reason for the challenged action. See McDonnell Douglas, 411 U.S. at 802.

Defendants have produced legitimate, non-discriminatory reasons for the failure to hire plaintiff. Mayor Carr-Hurst selected Ms. Abernathy because she was already a City employee, she was already performing some of the EDD's job duties, and she was qualified for the EDD position. In contrast, Mayor Hurst reviewed plaintiff's resume (Ross Dep. Ex. 1 [35-1], at 211) and elected not to interview him because he lacked relevant economic development experience on behalf of a municipal government. Given these articulated reasons, plaintiff must raise a triable issue over whether these reasons are pretextual. See McDonnell Douglas, 411 U.S. at 804.

17

In a failure to hire claim, a plaintiff faces a heavy burden to establish pretext.

[Plaintiff] "cannot . . . establish pretext simply by showing that [he] is more qualified than [the person hired]. . . . [D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004) (citations omitted); see also

Higgins v. Tyson Foods, Inc., 196 F. App'x 781, 783 (11th Cir. 2006) (per curiam)

("Since Ash[, 546 U.S. 454 (2006)] our Court has used the Cooper test.").

On the record in this case, plaintiff has failed to offer any probative evidence suggesting that the disparity in qualifications was such that no reasonable person could have chosen Ms. Abernathy over him.[20]  To the contrary, the undisputed material facts strongly support a finding that defendants' act of promoting Ms. Abernathy (a current City employee already performing some aspects of the EDD position) instead of hiring plaintiff (an unknown quantity with a resume reflecting irrelevant experience) was a reasonable decision.  Plaintiff simply fails to submit any probative evidence suggesting that his sex or gender had anything to do with the challenged employment decision.  Likewise, plaintiff has failed to submit

---

[20] Plaintiff does not even attempt to argue that he was better qualified than Ms. Abernathy.

18

evidence of a "convincing mosaic" of circumstantial evidence that warrants an inference of intentional discrimination. Therefore, the undersigned **RECOMMENDS** entry of summary judgment for defendants on plaintiff's Title VII failure to hire claim.

### B.    Plaintiff's Age Discrimination Claim

The ADEA provides in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may support a claim under the ADEA through either direct evidence or circumstantial evidence." Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1270 (11th Cir. 2014). "To ultimately prevail, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" Id. (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009)). Thus, "[t]he ADEA requires that 'age [be] the 'reason' that the employer decided to act.'" Mora v. Jackson Mem. Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (per curiam) (quoting Gross, 557 U.S. at 176).

19

This prohibition on age discrimination applies to persons who are at least 40 years of age.  29 U.S.C. § 631.  Where, as here, a plaintiff seeks to prove age discrimination based on circumstantial evidence, the analysis is governed by the McDonnell Douglas burden-shifting framework.  See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).[21]  Under that framework, the plaintiff has the initial burden of establishing a prima facie case of age discrimination.  Id.  In an ADEA case involving failure to hire such as this one, the plaintiff may establish a prima facie case by showing "'(1) that he was a member of the protected group . . .; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought . . . ; and (4) that he was qualified to do the job for which he was rejected.'"  Maust v. United Parcel Serv. Gen. Servs. Co., 897 F. Supp. 2d 1351, 1360 (N.D. Ga. 2012) (quoting Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998)).  As

_____

[21] Though age discrimination claims grounded in Section 1983 are not regarded as identical to ADEA claims, the Eleventh Circuit has held that the two causes of action share the same elements of proof and are subject to the same analytical framework.  Burns v. Gadsden State Cmty. Coll., 908 F.2d 1512, 1517-18 (11th Cir. 1990) (per curiam).  Thus, when a plaintiff asserts a Section 1983 claim based on age discrimination, courts apply the same analysis to such a claim as they would an ADEA claim.  More precisely, courts employ the McDonnell-Douglas framework.  Id.

already discussed, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. Chapman, 229 F.3d at 1024. If the defendant does so, the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant were merely pretextual. Combs, 106 F.3d at 1528. In making the required pretext showing, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. Rather, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Id. at 1024-25.

As with the Title VII claim, assuming plaintiff could establish a prima facie case, defendants have articulated a legitimate, non-discriminatory reason for not hiring plaintiff, which he cannot show to be pretextual. As already discussed, the Mayor declined to interview Mr. Ross because his resume did not reflect what she considered to be relevant experience. Additionally, the Mayor interviewed and

21

hired Ms. Abernathy because she was already a City employee, she was a known quantity, and she was already performing some of the EDD's job duties. Plaintiff has submitted no probative evidence suggesting that, but for his age, he would have been hired. Indeed, it is highly unlikely that a Mayor who is in her seventies would have used plaintiff's age (60) as a factor in her employment decision. Therefore, the undersigned **RECOMMENDS** entry of summary judgment for defendants on plaintiff's age discrimination claim.

### C.    <u>Qualified Immunity</u>

Mayor Carr-Hurst argues that she is entitled to qualified immunity on plaintiff's Fourteenth Amendment Equal Protection Clause claims of sex and age discrimination because she acted within her discretionary authority to hire one candidate over another and because her actions did not violate any clearly established right. (Defs.' Br. [34-1] 5-9.) Although plaintiff discusses qualified immunity in passing (Pl.'s Resp. [36-1] 3-4), the cases he cites address search and seizure issues, not employment discrimination. Plaintiff thus fails to show that the Mayor acted outside her discretionary authority or that her decision to hire a person she believed was better qualified violated a clearly established right.

Given the failure of his Title VII and ADEA claims (discussed above), there was no violation of any of plaintiff's federally protected rights. Accordingly, the

Mayor is entitled to qualified immunity against both plaintiff's the sex and age discrimination claims asserted against her under the Fourteenth Amendment. See Davis v. DeKalb Cty., Ga., No. 1:03-CV-2853-WSD, 2005 WL 8154356, at *14 (N.D. Ga. May 31, 2005), R. & R. adopted, 2005 WL 8154358 (N.D. Ga. July 25, 2005) ("Plaintiff cannot show that Defendant Batye violated her clearly established right to Equal Protection under the Fourteenth Amendment because, as concluded in the above-analysis under Title VII, Plaintiff cannot show that Defendant Batye's actions in promoting Mr. Cheek in 2002 were intended to discriminate against Plaintiff on the basis of her race or gender."); Woodliff v. Ga. Dep't of Cmty. Affairs, No. 1:04-CV-3529-BBM, 2005 WL 8155146, at *9 (N.D. Ga. Dec. 6, 2005) ("As discussed in Section III.A, supra, of this Order, the court finds Woodliff is unable to demonstrate that defendants discriminated against him on the basis of age in violation of the ADEA. Because Woodliff cannot show that defendants violated either his statutory or constitutional rights, defendants' motion that Matthews, Williamson, and Perry be granted summary judgment due to qualified immunity is GRANTED."). Therefore, the undersigned **RECOMMENDS** entry of summary judgment for defendants on plaintiff's Fourteenth Amendment Equal Protection Clause claims.

23

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment [34] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED**, this 6th day of July, 2023.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE